UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BENNIE J. ANDERSON, JR., as Next Friend of JASON LEWIS ANDERSON, </br></br> Petitioner, </br></br> v. </br></br> SUPERINTENDENT/DIRECTOR, MOCCASIN BEND MENTAL HEALTH INSTITUTE, </br></br> Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) </br></br> No.: 1:25-CV-379-DCLC-CHS |

## MEMORANDUM OPINION

Jason Lewis Anderson ("Mr. Anderson") is confined to the Moccasin Bend Mental Health Institute pursuant to an Order Directing Judicial Hospitalization entered in the Criminal Court of Greene County, Tennessee, on April 30, 2024 [*See, e.g.*, Doc. 1, p. 2, 5]. On Mr. Anderson's behalf, his brother and next friend[1], Bennie J. Anderson ("Petitioner"), filed an unsigned federal habeas petition under 28 U.S.C. § 2241 [Doc. 1], that was supplanted by a substantively identical signed petition [Doc. 15] as later corrected [Doc. 17]; substantively identical "Emergency Motion[s] for Immediate Review" [Docs. 3, 16]; and a "Motion to Supplement Petition for Writ of Habeas Corpus and Emergency Motion for Interim Relief" [Doc. 11]. Upon due consideration of the record before the Court and the applicable law, the Court finds that habeas relief should be denied, Petitioner's motion to supplement and for interim relief should be denied [Doc. 11], and Petitioner's remaining motions [Docs. 3, 16] should be denied as moot.

---

[1] The Court granted Bennie J. Anderson next friend status by Order entered January 26, 2026 [Doc. 14].

## I. BACKGROUND[2]

On September 6, 2023, the Criminal Court of Greene County, Tennessee, ordered Mr. Anderson to undergo an outpatient evaluation after he was found not guilty by reason of insanity ("NGRI") on the charge of aggravated domestic assault in case number 22CR608 [Doc. 1, p. 7]. On April 4, 2024, a psychological examiner at Frontier Health Assessment and Forensic Services penned a letter to Greene County General Sessions Judge, Kenneth N. Bailey, Jr., noting that Mr. Anderson (1) had been scheduled for a forensic examination on April 3, 2024, concerning pending charges of criminal trespassing, disorderly conduct, resisting stop, and arrest; (2) that Mr. Anderson was previously "evaluated for another court on separate charges and met judicial commitment standards"; (3) that there was an expectation that Mr. Anderson would be hospitalized; and (5) that in light of these events, Mr. Anderson's evaluation for the pending charges was "cancel[l]ed pending Mr. Anderson's eventual return to the community" [*Id.* at 9]. On April 30, 2024, an Order was entered in case number 22CR608 directing Mr. Anderson's judicial hospitalization at a mental health institution pursuant to Tennessee Code Annotated § 33-7-303(c) [*Id.* at 5].

In November 2024, Mr. Anderson unsuccessfully sought federal habeas relief from his judicial commitment under 28 U.S.C. § 2254.[3] *See Anderson v. Tennessee*, 1:24-cv-371-DCLC-CHS (E.D. Tenn. Apr. 18, 2025). In December 2025, Petitioner filed this action under 28 U.S.C. § 2241, arguing that (1) Mr. Anderson's evaluation order did not authorize involuntary

---

[2] The exhibits to the petition are part of the petition itself. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings[.]" (citing Fed. R. Civ. P. 10(c))).

[3] The Court may take judicial notice of its own records. *See* Fed. R. Evid. 201(b)(2); *United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir. 1977).

2

commitment; (2) the judicial hospitalization order "did not adjudicate civil commitment, did not terminate [Mr. Anderson]'s criminal case, and did not waive [Mr. Anderson]'s right to future hearings, review, or participation"; (3) one of Mr. Anderson's forensic assessments was not completed; and (4) Mr. Anderson has been confined without entry of a civil judgment or "periodic judicial review[,]" and court "proceedings continued without him" [Doc. 15 p. 2–3]. Petitioner argues that these circumstances violate Mr. Anderson's right to due process, to be free from unlawful seizure, and to be present at proceedings affecting his liberty [*Id.* at 3–4].

After filing the petition in this cause, Petitioner filed an unsigned "Motion to Supplement Petition for Writ of Habeas Corpus and Emergency Motion for Interim Relief[,]" alleging Mr. Anderson's confinement in punitive, unconstitutional conditions [Doc. 11].

II.     ANALYSIS

This Court may issue the writ of habeas corpus to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. Federal courts must conduct an initial review of all habeas corpus petitions. 28 U.S.C. § 2243. This review requires the presiding judge to dismiss the petition without requiring a response "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court[.]" *See* Rule 4, Rules Governing Section 2254 Cases in the United States District (§ 2254 Rule(s)); *see also* § 2254 Rule 1(b) (permitting application of § 2254 Rules to § 2241 petitions).

   A.     **The Petition**

Although Petitioner has attached only partial court orders to the initial petition, it is apparent that Mr. Anderson was found NGRI on aggravated domestic assault charges, underwent a forensic evaluation where it was determined Mr. Anderson met judicial commitment standards,

that a subsequent forensic evaluation on other charges was cancelled in light of that finding, and that Mr. Anderson was ordered committed to a mental hospital for treatment [*See* Doc. 1, p. 5–9].

Under Tennessee law, when a person is acquitted on a verdict of NGRI, "the criminal court shall immediately order the person to be diagnosed and evaluated on an outpatient basis." Tenn. Code Ann. § 33-7-303(a)(1). That was done in Mr. Anderson's case [*See, e.g.,* Doc. 1, p. 7]. Commitment for NGRI requires the criminal court to hold a hearing to determine whether the individual meets civil commitment standards and, if so, "the court shall enter an order of judicial hospitalization and transfer the person to the custody of the commissioner [of mental health and substance abuse services] subject to department rules governing release procedures." Tenn. Code Ann. § 33-7-303(c)(1); *see also* Tenn. Code Ann. § 33-1-101(6). That procedure was also followed in this case [Doc. 1, p. 5]. An appeal following an adverse ruling after the conclusion of the hearing is authorized under Tenn. Code Ann. § 33-6-708. *See* Tenn. Code Ann. § 33-6-708(c)(5). And Mr. Anderson could have, but did not, timely appeal the fact of his judicial commitment, a fact the Court found in Mr. Anderson's § 2254 action. *See Anderson*, 1:24-cv-371-DCLC-CHS (E.D. Tenn. Apr. 18, 2025). Accordingly, Petitioner's arguments that Mr. Anderson is under an unauthorized commitment, that he has not received the required evaluation(s) for such commitment, that his absence from proceedings violated his rights, and/or that was subject to an unlawful seizure are without merit.[4]

---

[4] These challenges are also "second or successive," as they were (or were capable of being) brought in Mr. Anderson's first habeas petition. *See, e.g., In re Hill*, 81 F.4th 560, 569 (6th Cir. 2023) ("When a second-in-time petition raises a new claim purporting to question the previously challenged judgment, the new claim was neither unripe nor unexhausted the first go-around, and the petitioner nevertheless failed to raise the claim, it is 'second or successive.'"); *see also* 28 U.S.C. § 2244(b)(3) (requiring authorization from appellate court before a petitioner may pursue a successive action in the district court).

The Court considers separately the argument that Mr. Anderson is unlawfully confined without "periodic judicial review hearings" [Doc. 15 p. 3]. Due process requires "that after commitment periodic examinations must be given at reasonable intervals; and that the committed patient must be released when his mental condition is such that his liberation would not lead to further violations of society's rules and his own good requires no further restraint." *State v. Stacy*, 601 S.W.2d 696, 705 (Tenn. 1980). To this end, Tennessee law requires the chief officer[5] to conduct a periodic review every six (6) months to "examine . . . each person admitted . . . for treatment of mental illness or serious emotional disturbance." Tenn. Code Ann. § 33-6-701. Thereafter, "[w]hen the chief officer determines that the person is eligible for discharge under . . . § 33-6-706 [involuntary commitment], the chief officer shall notify the committing court of that conclusion, of the basis for it, and, if the discharge is under § 33-6-602, of the outpatient treatment plan approved by the releasing facility and the qualified mental health professional for the person." Tenn. Code Ann. § 33-6-708(c)(1).

Accordingly, the periodic review required by the law is conducted by the treating hospital. The committing court's intervention occurs in circumstances like Mr. Anderson's where the treating hospital recommends discharge.[6] There is no indication before the Court whether these hospital-initiated periodic reviews have occurred. But even if they have not, a committed individual or their "attorney, parent, legal guardian, legal custodian, conservator, spouse or adult

---

[5] "'Chief officer' means the person with overall authority for a public or private hospital or treatment resource, or the person's designee[.]" Tenn. Code Ann. § 33-1-101(4).

[6] An individual to be discharged following a NGRI verdict may "not be discharged from the commitment without proceedings," with the hospital providing notice to the court and district attorney first, and the court making a finding "by clear, unequivocal, and convincing evidence" that he is not eligible for discharge before ordering his return to hospitalization. Tenn. Code Ann. § 33-6-708(a),(c).

5

next of kin" can independently request "a current examination of the person's mental condition" every six (6) months. *See* Tenn Code Ann. § 33-6-702. Petitioner does not allege that he has requested a current examination of Mr. Anderson's mental condition for discharge of commitment and been denied. Accordingly, Petitioner has not exhausted his available state remedies with regard to this claim. *See Phillips v. Ct. of Common Pleas, Hamilton Cnty.*, 668 F.3d 804, 810 (6th Cir. 2012) (citation and footnote omitted); *Collins v. Million*, 121 F. App'x 628, 630 (6th Cir. 2005) (finding that regardless of whether a petition is brought under § 2254 or § 2241, a petitioner "is required first to exhaust his state court remedies").

### B. Supplement/Motion for "Interim Relief"

Petitioner also seeks "emergency interim relief" on Mr. Anderson's behalf related to the conditions under which he is confined [Doc. 11]. This motion is unsigned, and Petitioner did not comply with the Court's Order requiring him to sign the document if he wanted it to be considered by the Court [*See* Doc. 14].

But even if the motion were signed, it would offer no relief, because challenges to the conditions of confinement must be pursued in a civil rights complaint. *See Preiser v. Rodriguez*, 411 U.S. 475, 486–87 (1973); *see also Jones v. Williams*, No. 3:21-cv-01350, 2022 WL 2666610 at *3 (N.D. Ohio 2022) ("Section 2241 is not available, however, to review questions unrelated to the cause of detention." (citing *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004))). Accordingly, Petitioner's motion to supplement the complaint and request for emergency relief related to the conditions of Mr. Anderson's confinement [Doc. 11] will be denied.

### III. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1); se*e also Greene v. Tenn.*

*Dep't of Corr.*, 265 F.3d 369, 372 (6th Cir. 2001) (requiring prisoner to obtain a COA to appeal resolution of a § 2241 petition rejecting his challenge to his sentencing credit because his custody arose out of a state conviction). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Because reasonable jurists would not debate the Court's rejection of the petition, a COA will be denied.

## IV.   CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus will be **DENIED**, this action **DISMISSED**, Petitioner's motion to supplement/for interim relief [Docs. 11] **DENIED**, and the remaining motions [Docs. 3, 16] **DENIED** as moot.

Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED:**

s/Clifton L. Corker<br>United States District Judge

7

Case 1:25-cv-00379-DCLC-CHS   Document 19   Filed 02/10/26   Page 7 of 7   PageID #: 69